252 N.J. Super. 230 (1991)
599 A.2d 604
LOUIS A. RUPRECHT, PLAINTIFF,
v.
NANCY HOLT RUPRECHT, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Union County.
June 4, 1991.
*232 Gerri Gomperts for plaintiff (Stevens & Gomperts, attorneys).
Edward J. O'Donnell for defendant (Skoloff & Wolfe, attorneys).
PISANSKY, J.S.C.
Should there be a cause of action between spouses based upon emotional distress unaccompanied by physical injury in a divorce case? This matter comes before this court on defendant's motion to dismiss the second amended complaint alleging the said tort and plaintiff's motions to compel discovery and for leave to depose defendant and co-respondent.
The parties were married on July 9, 1960. Plaintiff had just graduated from college and was about to attend law school. Defendant worked fulltime until their first of three children was born in the following year. Defendant thereafter continued to work part-time for the next several years. After plaintiff graduated from law school, defendant left her job and became a full-time homemaker.
When the children were older, defendant returned to work, approximately 10 to 11 years ago. This is when trouble started in this marriage. There were numerous periods of separation during this time, the first of which lasted for two weeks, others *233 for two-and-a-half years, a year and four months, three months, and nine months. The wife filed for divorce in February 1985 alleging separation in July 1982. Plaintiff filed a counterclaim for divorce based on separation. The suit was dismissed in February 1986 for want of prosecution under R. 1:13-7. From the start of defendant's employment, plaintiff was suspicious of defendant's relationship with her boss. Plaintiff continuously asked his wife whether she was having an affair with him. Defendant repeatedly denied any wrongdoing.
Plaintiff and defendant were living together on August 6, 1990, when defendant left plaintiff. On September 8, 1990, plaintiff learned for the first time that defendant had had an adulterous relationship with her employer during all of the time of her employment. Before learning about the adultery, plaintiff filed for divorce based on extreme cruelty on August 15, 1990. An answer and counterclaim were filed by defendant on September 17, 1990. Thereafter, on September 18, 1990, plaintiff filed an amended complaint containing a cause of action for divorce on the grounds of adultery. The allegations contained in his amended complaint were specific as to time and place and named the alleged co-respondent.
Shortly after filing his amended complaint, plaintiff served upon defendant 64 interrogatories (excluding subparts) seeking various details concerning the alleged adultery. Not wishing to contest plaintiff's cause of action for divorce, defendant prepared an appearance as to the amended complaint. By her attorney's correspondence of December 6, 1990, she refused to answer the interrogatories on the grounds that she would not be offering any testimony or evidence to rebut the allegations of adultery contained in the amended complaint. After having received the appearance as to the amended complaint, but before same was filed, plaintiff filed a second amended complaint including a count for the intentional infliction of emotional distress, or as otherwise called, a cause of action for "outrage." For a discussion and recognition of this tort as an independent cause of action rather than an element of damages *234 in actions based on either negligence or an intentional tort, see Hume v. Bayer, 178 N.J. Super. 310, 428 A.2d 966 (Law.Div. 1981).
Can one spouse sue the other for the intentional infliction of emotional distress in absence of physical injury in a divorce action? There is no doubt that one spouse can sue the other for an intentional tort causing personal injury and the damage that ensues therefrom. Tevis v. Tevis, 79 N.J. 422, 400 A.2d 1189 (1979); Merenoff v. Merenoff, 76 N.J. 535, 388 A.2d 951 (1978); see also G.L. v. M.L., 228 N.J. Super. 566, 550 A.2d 525 (Ch.Div. 1988). However, there is no divorce case in New Jersey that recognizes a cause of action between spouses based upon emotional distress unaccompanied by physical injury. Therefore, this court looks to other jurisdictions. The Supreme Court in Oregon in Davis v. Bostick, 282 Or. 667, 580 P.2d 544 (1978), held that absence of physical injury did not immunize a husband against suit by his wife for intentional infliction of emotional distress. Among the wife's allegations were that the husband had threatened to kill her and her male friends, accused her of being in the hospital for an abortion, destroyed some personal property, and told third persons she had a fatal mental illness. Noting that the court had abolished in an earlier case the rule of interspousal immunity in actions asserting intentional torts, defendant argued that where no physical injury is alleged, there should be immunity. Id., 580 P.2d at 546. The basis for defendant's argument was that the courts would be inundated with divorce proceedings that would allege actions for intentional infliction of emotional distress. In refusing to create that exception to the abrogation of interspousal immunity for intentional torts, the Davis court stated that:
We decline to carve out that exception to the destruction of interspousal immunity for intentional torts. Apitz [v. Dames, 205 Or. 242, 287 P.2d 585 (1955)] did not create a flood of litigation, even though it is a fair guess that the deterioration of many marriages since 1955 has been accompanied by the rendering by one spouse to another of physical injury. While injuries of a psychic nature as proved here are very likely much more common than physical injury, we see no virtue in basing a rule of law on a speculative fear of *235 increased litigation. We prefer to rely upon the burden of proof as the best protection against unwarranted, meretricious or merely vindictive litigation. [Ibid.]
Thus, the Supreme Court of Oregon negated the "floodgates" argument of defendant and further cited Dean Prosser in doing so: "It is the business of the Court to remedy wrongs that deserve it, even at the expense of a `flood of litigation,' and it is a pitiful confession of incompetence on the part of any court of justice to deny relief on such grounds." Prosser, Torts (4 ed. 1971), § 12 at 51.
In further formulating the policy interests for or against such a cause of action in a divorce case, one contention raised is that recognition of this tort would resurrect marital fault, thereby undermining years of reform. In Chiles v. Chiles, 779 S.W.2d 127 (Tex. Ct. App. 1989), reh'g den. (1989), the court concluded that to permit separate damages in a divorce action for emotional distress, not accompanied by physical injury, "would result in evils similar to those avoided by the legislature's abrogation of fault as a ground for divorce." Id. at 131. Similar sentiments were expressed in Doe v. Doe, 136 Misc.2d 1015, 519 N.Y.S.2d 595 (Sup.Ct. 1987), where the court considered the claim of a litigant seeking damages for the intentional infliction of emotional distress occasioned by "AIDS-phobia." The court commented:
Clearly plaintiff is trying to circumvent the dictates of equitable distribution by attempting to obtain a money judgment for acts which are the basis for her divorce action. She is attempting to obtain a division of the marital property based on fault. Division of property by degree of fault has clearly been disallowed in this state absent a showing of exceptional circumstances ... The court will not countenance this blatant attempt to avoid the dictates of the Legislature. [Id., 519 N.Y.S.2d at 597-598; citations omitted]
Besides resurrecting fault as an issue in a divorce proceeding, some courts have feared that this new tort in a divorce case "would tend to obfuscate the issues of custody, support, and division of community property." Chiles v. Chiles, supra at 132.
This court is not satisfied that a flood of litigation with fraudulent claims or the resurrecting of fault, or the possibility *236 of confusing the issues of custody, support, and equitable distribution should deny one spouse from suing the other in a divorce proceeding for emotional distress without physical injury. There is no valid policy interest nor logical reason to allow one spouse to sue the other for physical injury but not for emotional distress absent physical injury. Certainly mental and emotional distress is just as "real" as physical pain. Berman v. Allan, 80 N.J. 421, 433, 404 A.2d 8 (1979). Plaintiff should be left to his or her proofs and relief should be available to the wronged party.
Therefore, it is this court's opinion that an independent cause of action between spouses for emotional distress without physical injury should exist in a divorce case. The issue thus presented is whether the alleged facts herein, if proved, constitute such a cause of action.
When the court is faced with a motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and all his allegations are taken as true. R. 4:6-2(e) and R. 4:46. Further, see section 46 of the American Law Institute's Restatement Torts 2d (1965) (Restatement) and the comments and illustrations that follow which explain the tort of emotional distress and its applicability. Comment h provides for the court to make the initial determination whether the conduct complained of can reasonably be regarded as so extreme and outrageous as to permit recovery. It is for the court to determine in the first instance whether the relevant conduct may reasonably be regarded as outrageous. Roalson v. Chaney, 334 N.W.2d 754, 756 (Iowa 1983).
Does the conduct complained of "exceed all bounds usually tolerated by decent society," 4 Prosser, Torts, supra at 56, or is it "extreme and outrageous," Restatement, supra, § 46? To be outrageous, the conduct must be so extreme in degree "as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." Restatement, supra, § 46 comment d; Hafner v. *237 Hafner, 135 N.J. Super. 328, 333-334, 343 A.2d 166 (Law Div. 1975).
Besides outrageous conduct by defendant, plaintiff must show that the act was intentional on the part of defendant, that the act was the proximate cause of the distress, and that the distress is severe to establish a claim for intentional infliction of emotional distress. Buckley v. Trenton Savings Fund Soc., 111 N.J. 355, 366, 544 A.2d 857 (1988); 49 Prospect Street v. Sheva Gardens, 227 N.J. Super. 449, 474, 547 A.2d 1134 (App. Div. 1988).
Were the alleged adulterous actions of the wife learned by plaintiff on September 8, 1990, so "outrageous" as to set forth a cause of action for emotional distress? Did the alleged adultery of the wife learned by plaintiff in September 1990 reach the level of outrageousness as necessary for tort liability? Plaintiff states that he now learns that the adulterous activity started 11 years ago when his wife started to work for her present employer. Plaintiff further states that he had been suspicious of his wife for the last 11 years of their marriage, and when he asked her about her faithfulness, she always denied any wrongdoing. However, it is important to note that during the last 11 years of the marriage, there were five separations for at least a total of 4 1/2 years, there was a complaint for divorce filed by defendant in 1985 and a counterclaim filed for divorce by plaintiff, and on numerous occasions the parties engaged in marriage counselling.
In Strauss v. Cilek, 418 N.W.2d 378, 379 (Iowa Ct. App. 1987), the court considered the claim of a husband against his friend for intentional infliction of emotional distress arising from his wife's romantic and sexual relationship with the friend. After noting that plaintiff's wife had obviously been unhappy in her marriage and that she had previously engaged in an extramarital affair that lasted for five years with another of the plaintiff's good friends, the court concluded:

*238 We do not condone promiscuous sexual conduct. However, we do not find defendant's conduct in participating in a sexual relationship with a married woman, his friend's wife, who willingly continued the affair over an extended period, is atrocious and utterly intolerable conduct so extreme in degree as to go beyond all possible bounds of decency. The parties are residents of Iowa City, a community of 50,000 and the home of the University of Iowa. A recitation of the facts of this case to an average member of the community would not lead him to exclaim, "Outrageous!" [Id. at 380; citations omitted]
A recitation of the facts of this case to an average member of the community would not lead him to exclaim, "Outrageous!" Restatement, supra, § 46, comment d. Assuming all the allegations against Mrs. Ruprecht to be true, this court must nonetheless conclude that the actions complained of fail to reach the level of outrageousness necessary for liability under this tort. The count of the complaint based on this tort is therefore dismissed.
This court's finding that defendant's actions were not outrageous renders unnecessary the findings whether the other elements of the tort were satisfied. However, this court does comment that plaintiff first learned of the adulterous activity of defendant in September 1990 and now alleges that the adulterous affair, details of which defendant described to third persons, greatly embarrassed and humiliated him. His alleged mental distress occurred when he learned of defendant's adulterous activity in September 1990, not when she allegedly broadcast the events to third parties. He could not have been injured prior to September 1990 since he did not know about the adultery until then. In order to suffer emotional distress from defendant's conduct, it was necessary for plaintiff to know about it. The tort must include the intentional act on the part of defendant that her alleged outrageous conduct would cause him severe emotional distress. Strauss v. Cilek, supra. Nothing was done by her to make the incidents known to him. In fact, she kept it a secret from him for the 11 years. This is clear since he knew nothing of the alleged adulterous activity until September 1990.
*239 As to plaintiff's motion to compel discovery, this motion is denied because of the court's ruling dismissing the "outrage" tort complaint and because defendant has stipulated that she will not offer any rebuttal testimony or evidence concerning the allegations of adultery. See Mahne v. Mahne, 66 N.J. 53, 328 A.2d 225 (1974), where the court stated:
... The plaintiff has the burden of establishing his charge of adultery and there is no suggestion by him that he will be unable to proceed expeditiously with his case without the aid of the pretrial testimony from the defendants. At the trial the plaintiff will have the benefit not only of his own showing but also of any inferences to be drawn from the defendant's pretrial testimonial refusals. [66 N.J. at 62, 328 A.2d 225].
A review of the amended complaint based on adultery shows that plaintiff will be able to establish a cause of action for divorce on the grounds of adultery. He has specifically pleaded the times and dates of the alleged acts and has named the co-respondent. Defendant has stipulated that she will not offer any rebuttal testimony or evidence concerning the allegation of adultery. The co-respondent has been served and has not intervened. Defendant's answering the 64 interrogatories with subparts thereto will only prove to be a needless "annoyance, expense, embarrassment or oppression," R. 4:17-6, to her. Therefore, there will be a protective order providing that the wife not answer the said interrogatories.
As to plaintiff's motion for leave to depose defendant and the named co-respondent as to the cause of action alleged, plaintiff does not show good cause for the taking of the depositions of defendant and co-respondent, R. 5:5-1(d); therefore, that motion is denied.
It is apparent that plaintiff seeks discovery as to defendant's adulterous activity, not to prove a cause of action of adultery, but to avoid any successful request for alimony by defendant. Fault still may be considered by a court when awarding alimony. Lynn v. Lynn, 165 N.J. Super. 328, 334, 398 A.2d 141 (App.Div. 1979). See also Gugliotta v. Gugliotta, 160 N.J. Super. 160, 388 A.2d 1338 (Ch.Div. 1978). Further, see N.J.S.A. 2A:34-23:

*240 In all actions for divorce other than those where judgment is granted solely on the ground of separation, the court may consider also the proof made in establishing such grounds in determining the amount of alimony or maintenance that is fit, reasonable and just.
Therefore, this court will allow limited discovery of defendant with interrogatories and depositions within 30 days of this opinion. This discovery will be limited to the economic aspect of defendant's alleged adulterous acts as related to the alimony issue. See Lynn v. Lynn, supra, 165 N.J. Super. at 338, 398 A.2d 141:
The tenor of that opinion [trial judge] convinces us that Mrs. Lynn was denied alimony solely because of post-separation adultery, not because of her economic prospects ... There was never any contention that Mrs. Lynn benefitted economically from her post-desertion, extra-marital, sexual liaisons, thereby justifying a reduction or elimination of alimony therefor. [165 N.J. Super. at 338, 398 A.2d 141; citations omitted]
The issue of pendente lite counsel fees and costs will be reserved until the time of trial.
The attorney for defendant will prepare the order in accordance with this opinion.