708 A.2d 74

ALBERT REID, PLAINTIFF–RESPONDENT, v. MAGDELINE
G. REID, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 10, 1997—Decided January 27, 1998.

14

Before Judges HAVEY, LANDAU and COLLESTER.

*Lee W. Shelly,* argued the cause for appellant (*Mr. Shelly,* on the brief).

*Brian P. Latimer,* argued the cause for respondent (*Jacobowitz, Grabelle, Defino, McGroughran & Latimer,* attorneys; *Mr. Latimer,* of counsel and on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

Defendant appeals from those provisions of a judgment of divorce denying her alimony and counsel fees, and rejecting her request for equitable distribution and her demand that the marriage be dissolved based on extreme cruelty. Defendant's application for equitable distribution was denied on the basis that the parties' marital assets had previously been distributed by settlement agreement during defendant's Chapter 7 bankruptcy proceedings between plaintiff and the Trustee in the Bankruptcy Court. We affirm.

Plaintiff Albert Reid and defendant Magdeline G. Reid were married on February 8, 1978. No children were born of the marriage. Prior to the marriage, plaintiff purchased Keansburg Amusement Park for $1.25 million. Plaintiff's income at the time of the marriage from his employment at Keansburg Amusement Park and House Chek, Inc., a home inspection business, was $25,000. Towards the latter part of the marriage, his income had

increased to $75,000. Defendant owned a used furniture store, antique shop and bridal gown salon. She was also a part owner of a video store and engaged in various real estate transactions as a part owner of a real estate company.

The parties owned modest residences until, in 1985, they purchased a home in Rumson for $735,000.

In September 1988, defendant moved to Austin, Texas, with her son from a prior marriage. Plaintiff remained in New Jersey. While in Texas, defendant purchased a residential structure from Charles Trois for $1.2 million. However, after closing, a house inspection revealed that it was, according to defendant, uninhabitable due to wiring and structural defects. Defendant sued Trois and, after a trial in Texas, judgment was entered in favor of Trois on his crossclaim against defendant in the amount of $1.2 million, plus $2.5 million in punitive damages.

During the marriage, the parties formed a Missouri corporation known as Reid Enterprises, each holding a fifty-percent shareholder interest in the corporation. Reid Enterprises purchased Wilderness Safari Park for $1.5 million, each party contributing $150,000 towards the purchase price.

In November 1990, defendant filed a Chapter 11 bankruptcy petition in Missouri. On December 7, 1990, plaintiff filed a complaint for divorce in the Family Part, Chancery Division, Monmouth County.

By order dated May 21, 1991, Bankruptcy Court Judge See converted defendant's Chapter 11 proceeding into a Chapter 7 proceeding. On November 7, 1991, Judge See, with the consent of both parties (who were represented by counsel), granted the application of the trustee to assume jurisdiction "of all issues pertaining to the debtor's property, including marital property she may hold with Albert Reid."

The bankruptcy claim was tried on January 28 and 29, 1992. On February 24, 1992, Judge See entered an order awarding Reid Enterprises $201,500 in actual damages and $300,000 in punitive

damages, plus post-judgment interest from January 29, 1992, on its cross-claim which alleged mismanagement, fraud and embezzlement by defendant. Plaintiff, as a 50% shareholder in Reid Enterprises, was denied any relief on his personal cross-claim.

The Trustee thereafter filed a motion for an order approving an agreement between the Trustee and plaintiff settling the equitable distribution issues. After a hearing, Judge See granted the motion on August 13, 1992. Under the settlement, defendant was awarded approximately $4.4 million in marital assets, all of which was paid to her creditors.

On July 1, 1994, defendant moved in the Family Part for a review and/or redetermination of equitable distribution. Judge Feldman denied defendant's request, finding such issues were already disposed of by the Bankruptcy Court. The judge ordered that the only issues to be addressed during the divorce trial would be dissolution, alimony, and the apportionment of legal fees and costs. Over a nineteen-day period between January 10 and March 20, 1996, Judge Coogan heard testimony on those issues. During the trial, defendant moved to amend her counterclaim to include claims for breach of contract against plaintiff and Reid Enterprises. Judge Coogan denied the request. A written opinion was filed by Judge Coogan on July 31, 1996. Defendant's request for alimony was denied. A dual judgment of divorce was filed on August 20, 1996. By order dated September 19, 1996, both parties' requests for attorneys' fees were denied.

I

Defendant first argues that Judge Feldman erred in deciding that the Family Part had no jurisdiction to revisit the equitable distribution issues resolved by the settlement agreement approved by Judge See in the Bankruptcy Court. We reject the contention.

As stated, by order dated November 7, 1991, the Bankruptcy Court, by stipulation and agreement of the parties, assumed jurisdiction of all issues pertaining to the property of plaintiff and defendant. At the time of this order, defendant was represented

by counsel, Raymond Plaster, Esq. Notably, the order stated as follows:

> *All parties agree and stipulate this court may assume jurisdiction of all issues pertaining to the debtor's property, including marital property she may hold with Albert Reid* ....

> The court notes *all property of Magdeline G. Reid shall vest in the trustee* and shall not be transferred outright to the debtor, Magdeline G. Reid. This decision may influence any action by the Monmouth County Superior Court as it pertains to alimony or maintenance of the debtor.

> The court does not assume jurisdiction but requests the Monmouth Superior Court to go forward with the dissolution of the marriage between these parties and grant any and all orders it deems appropriate pertaining to alimony, maintenance, support or attorney fees and suit costs.

> [Emphasis added.]

In rejecting defendant's request that the equitable distribution issues be reconsidered in the Family Part, Judge Feldman observed:

> This is a matter which calls into direct focus the interrelationship between the bankruptcy code and the laws of the State of New Jersey as they impact on marriage, divorce, equitable distribution of property. It is axiomatic at this point that the Federal Bankruptcy Court has superior jurisdiction than does the State Court to deal with properties of an individual when that individual has filed for bankruptcy protection or in the alternative has involuntarily been brought into bankruptcy.

> ....

> Now, what does [Judge See's November 7, 1991 order] say? It says that there is an order for the Bankruptcy Court specifically by consent giving jurisdiction to the Federal Bankruptcy Court on all issues of property distribution inclusive of equitable distribution.

Judge Feldman noted that notwithstanding the prior consent order in the Bankruptcy Court, Judge See entertained defendant's objections and her counsel's argument why the settlement should not be approved in the bankruptcy proceedings. Judge Feldman observed that defendant's counsel made essentially the same arguments against the stipulation in the Bankruptcy Court that her divorce counsel had made respecting equitable distribution in the Family Part, that is, that the stipulation is "not fair." The judge concluded:

> It is the opinion of this Court that if Maggie Reid was unhappy with the decision of the Bankruptcy Court to approve the settlement between her,—between her

trustee and Al Reid the only appropriate forum for her would have been to appeal that decision, not to argue once again before the Family Court of New Jersey to revisit the same issue.

The Courts of New Jersey must give full faith and credit to the decisions of our sister Courts, certainly our sister Courts in the Federal system. Most certainly our sister Courts in the Federal system that have primary jurisdiction over both subject matter and person.

We agree with Judge Feldman's observations. Under 11 *U.S.C.A.* § 541(a)(1), an estate in a bankruptcy proceeding is comprised of, *inter alia*, "all legal or equitable interests of the debtor in property" as of the filing of the bankruptcy petition. Where a party seeking protection under Chapter 7 of the Bankruptcy Code is subsequently involved in a divorce proceeding, the interests of the debtor, for purposes of the divorce, "undisputedly belongs to her estate and the creditors thereof[.]" *In re McCulley*, 150 *B.R.* 358, 360 (Bankr.M.D.Pa.1993); *see also Motor Carrier Audit & Collection Co. v. Lighting Products, Inc.*, 113 *B.R.* 424, 426 (N.D.Ill.1989) (after filing bankruptcy, only trustee, not debtor, has the authority to enter into agreements for the disposition of estate property). A bankruptcy trustee is not the agent of the debtor. 11 *U.S.C.A.* § 323(a). Rather, he acts as a representative of the estate, managing the estate's funds for the benefit of the creditors of that estate. *In re Obie Elie Wrecking Co., Inc.*, 35 *B.R.* 114, 115 (Bankr.N.D.Ohio 1983).

A judgment "on the merits" in a federal court will preclude a later action on the same merits in a state court. *Watkins v. Resorts Int'l Hotel & Casino*, 124 *N.J.* 398, 415, 591 *A.*2d 592 (1991). When a state court "considers the binding effect of a federal court judgment, nothing less is at stake than the integrity of federal judicial power and the coherence of the federalist judicial system." *Id.* at 410, 591 *A.*2d 592 (citing Ronan Degnan, *Federalized Res Judicata*, 85 *Yale L.J.* 741, 773 (1976)). As such, state courts are bound by federal court judgments, "just as they are bound by the judgments of sister states." *Ibid.*

Consequently, once defendant filed for protection under the Bankruptcy Code, all of her interests became the property of the

estate. The trustee is the representative of that estate. Thus, the trustee, and not defendant, had the authority to dispose of the marital assets by way of settlement. The parties, represented by counsel, all stipulated to the unique jurisdiction of the Bankruptcy Court, which approved the settlement agreement.

Further, Judge See gave defendant an opportunity to present arguments and evidence in opposition to the terms of the proposed settlement. After that hearing, Judge See made substantial findings respecting the validity and fairness of the settlement itself. Specifically, the judge found: (1) the trustee and plaintiff had engaged in lengthy discussions as to the equitable distribution issue; (2) plaintiff owned substantial nonmarital properties at the time of the marriage; (3) plaintiff waived a counsel fee claim and other claims as part of the settlement; and (4) defendant's testimony respecting undisclosed assets was unworthy of belief, and her valuations of marital properties were unsubstantiated. The judge concluded that "[i]n light of the circumstances surrounding this case and the evidence that would be admitted at trial, the Settlement Agreement is at least as beneficial, if not better, as the estate could anticipate to if this matter were tried[.]" In Judge See's opinion, approval of the Settlement Agreement "will serve the best interests of the Estate . . . ."

Consequently, once the agreement was memorialized by an order entered in the Bankruptcy Court, the Family Part was bound by that order, and precluded from considering the equitable distribution issues on the merits. Defendant's only remedy was to seek appellate review in the Federal Courts.

## II

Defendant next argues that Judge Coogan erred in denying her application for alimony. In addressing the issue of alimony, Judge Coogan, in a letter opinion dated July 31, 1996, described the parties' pre-divorce lifestyle and cataloged the numerous and diverse real estate acquisitions of defendant. He did so in order to depict defendant's "business and real property investment

acumen." He also cited Judge See's findings in the Bankruptcy Court that defendant had embezzled and misappropriated corporate money and assets from the parties' corporation, Reid Enterprises, Inc., by diverting daily receipts through her personal accounts and not recording "substantial cash transactions" in the corporate books. Based on these findings, Judge See had entered judgment in Reid Enterprises' favor in the amount of $501,500. Judge Coogan concluded that entry of the bankruptcy judgment collaterally estopped defendant from relitigating the question of "marital fault" to the extent that factor may bear upon the alimony issue. Noting that "marital fault" may be a factor to be considered when awarding alimony, *see Ruprecht v. Ruprecht*, 252 *N.J.Super.* 230, 239, 599 *A*.2d 604 (Ch.Div.1991), Judge Coogan denied defendant's alimony request. Significantly, he also said:

When you look at the relationship of the Reids, what you see are not marital partners but individual investors who happened to be married to each other. Their relationship—and most importantly their standard of living—is the result of their individual investment efforts, not co-joined and not necessitating one degree of dependence of one upon the other. What I am saying is that even without the marital fault issue in the case, there is simply no identifiable statutory factor which could be used to support alimony to the defendant. Particularly is this true when one considers, as the Court must under *N.J.S.A.* 2A:34-23(b)(9), that on equitable distribution [decided by the bankruptcy court], the defendant received in excess of 4.4 million dollars, albeit all of it went to her judgment creditors. Defendant has not carried the burden of establishing an entitlement to alimony and that prayer for relief is denied.

We agree with the judge that the bankruptcy judgment, which adjudicated the issue of defendant's conduct during the marriage involving misappropriation and embezzlement of funds from a marital asset, bars relitigation of that issue in the Family Part. *See Zirger v. General Accident Ins. Co.*, 144 *N.J.* 327, 337, 676 *A*.2d 1065 (1996). The issue raised is whether this improper economic conduct, deemed "marital fault" by Judge Coogan, was appropriately considered as a factor in determining defendant's entitlement to alimony.

Generally, the purpose of alimony is to provide the dependent ex-wife with sufficient funds to maintain her pre-divorce standard of living, provided that the ex-husband has the

financial wherewithal to provide such funds. *Innes v. Innes*, 117 *N.J.* 496, 503, 569 *A.2d* 770 (1990); *Lepis v. Lepis*, 83 *N.J.* 139, 150, 416 *A.2d* 45 (1980). We give deference to a trial judge's findings as to issue of alimony, if those findings are supported by substantial credible evidence in the record as a whole. *Heinl v. Heinl*, 287 *N.J.Super.* 337, 344, 671 *A.2d* 147 (App.Div.1996); *Rolnick v. Rolnick*, 290 *N.J.Super.* 35, 42, 674 *A.2d* 1006 (App.Div. 1996).

Recently, our Supreme Court observed that "in today's practice, marital fault *rarely* enters into the calculus of an alimony award." *Kinsella v. Kinsella*, 150 *N.J.* 276, 314–15, 696 *A.2d* 556 (1997) (emphasis added). *But see Lynn v. Lynn*, 165 *N.J.Super.* 328, 334, 398 *A.2d* 141 (App.Div.), *certif. denied*, 81 *N.J.* 52, 404 *A.2d* 1152 (1979); *Ruprecht, supra*, 252 *N.J.Super.* at 239, 599 *A.2d* 604; *D'Arc v. D'Arc*, 164 *N.J.Super.* 226, 237–38, 395 *A.2d* 1270 (Ch.Div.1978), *aff'd in part and rev'd in part on other grounds*, 175 *N.J.Super.* 598, 421 *A.2d* 602 (App.Div.), *certif. denied*, 85 *N.J.* 487, 427 *A.2d* 579 (1980), *cert. denied*, 451 *U.S.* 971, 101 *S.Ct.* 2049, 68 *L.Ed.2d* 350 (1981). In our view, this is the "rare" case justifying consideration of defendant's conduct during the marriage as a basis for rejecting her alimony demand. Judge Coogan could not ignore the embezzlement by defendant and her misappropriation of marital assets which "significantly impacted on her husband." The judge also observed that after the misappropriation and embezzlement, defendant attempted to "cover [her defalcations] up." We agree entirely with the Chancery judge's conclusion that this conduct should not be rewarded in a court of equity by an order entitling her to alimony.

Moreover, the history of the marriage did not reflect an emotional and financial partnership. Rather, the parties were "individual investors" who exhibited no degree of emotional or financial dependence upon the other. The judge also noted that defendant received in excess of $4.4 million in equitable distribution as a result of the bankruptcy proceeding. *See N.J.S.A.* 2A:34–23b(9). The fact that the distribution wound up in the hands of defen-

dant's creditors should not, on these facts, be dispositive of a claim that plaintiff must pay her alimony. In short, none of the factors set forth in *N.J.S.A.* 2A:34–23b dictated an award of alimony to defendant.

### III

Defendant also maintains that Judge Coogan erred in denying her application to amend her complaint adding a claim of breach of contract against plaintiff and Reid Enterprises.

On the sixteenth day of this nineteen-day divorce proceeding, plaintiff moved to amend the complaint to add a claim of breach of contract, asserting that Reid Enterprises owed her outstanding compensation in the amount of $84,000. In denying the motion to amend, Judge Coogan concluded that the adjudication in the Bankruptcy Court foreclosed defendant from asserting the breach of contract claim in state court.

Applying federal law, a claim is precluded when: (1) the judgment in the prior action is valid, final and on the merits; (2) the parties in the later action are identical to or in privity with the prior action; and (3) the claim in the later action grows out of the same transaction or occurrence as the claim in the earlier one. *Watkins, supra,* 124 *N.J.* at 412, 591 *A.*2d 592. Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined. *Ibid.* For the purposes of *res judicata,* causes of action are deemed part of a single "claim" if they arise out of the same transaction or occurrence. *Restatement (Second) of Judgments,* § 24 (1982). "If, under various theories, a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action. Otherwise, theories not raised will be precluded in a later action." *Watkins, supra,* 124 *N.J.* at 413, 591 *A.*2d 592. Thus, "if a federal court in a prior action would have exercised pendent jurisdiction over related state claims that were not asserted, a final judgment on the merits by the federal court

precludes raising those claims in a subsequent action in state court." *Ibid.*

Here, defendant's bankruptcy proceedings commenced in November 1990. From approximately May 1989 to July 1991, she managed the day-to-day operations of the Reid Enterprises' safari park. She thereafter was removed from the park by the Bankruptcy Court and relinquished her shares to the corporation. Trial in the bankruptcy case was held on January 28 and 29, 1992, and Judge See issued her findings of fact and conclusions of law on February 24, 1992. Consequently, defendant must have been aware of her potential breach of contract claim during the bankruptcy proceeding; it clearly grew out of the same transaction or occurrence which formed the basis of Reid Enterprises' and plaintiff's claims against her in the bankruptcy proceeding. Thus, Judge Coogan properly barred adjudication of the claim in the Family Part action based on claim preclusion principles.

Moreover, the judge was of the view that the claim was simply made too late in the Family Part proceedings: it was asserted during the course of an extended trial after the matter had been pending for nearly five years. Moreover, to have advanced her breach of contract claim, Reid Enterprises would have to have been joined as a party to the matrimonial proceedings and there was a question in the judge's mind as to whether Reid Enterprises was subject to the *in personam* jurisdiction of the New Jersey courts. Thus, Judge Coogan concluded that the untimeliness of defendant's application and possible jurisdictional impediments were sufficient reasons to deny it. We agree.

We have considered defendant's arguments that Judge Coogan erred in denying her request for a divorce on the basis of extreme cruelty and in denying her counsel fees and are satisfied they are clearly without merit. *R.* 2:11–3(e)(1)(E).

Affirmed.