920 A.2d 660 (2007)
392 N.J. Super. 215
Sebastiano GENOVESE, (a/k/a Sam Genovese), Plaintiff-Respondent,
v.
Mercedes GENOVESE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 30, 2007.
Decided April 17, 2007.
*661 Clifford E. Lazzaro & Associates, Newark, attorneys for appellant (Heather A. Fierro, on the brief).
*662 Paul N. Weeks, Bayonne, attorney for respondent.
Before Judges KESTIN, GRAVES and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.T.C. (temporarily assigned).
Defendant Mercedes Genovese appeals from certain provisions of the Dual Final Judgment of Divorce, which was filed on April 24, 2006. We are not persuaded the trial court erred in its decision and, accordingly, we affirm.
The parties were married on September 21, 1974. This was the first marriage for each party. No children were born of the marriage. Plaintiff Sebastiano Genovese moved from the former marital home on October 10, 1993, to pursue another relationship. Since that time, the parties have resided in separate residences. Each party also expressed that there existed no reasonable prospect of reconciliation of their marital differences.
Plaintiff filed his first complaint seeking divorce in the State of New York on April 24, 1994. The request was granted and a judgment of divorce (JOD) was entered in December 1997. Plaintiff remarried. Defendant appealed the entry of the JOD, attacking the grounds alleged for divorce. On May 10, 1999, the JOD was reversed and plaintiff's complaint was dismissed by the New York Supreme Court, Appellate Division, because the evidence was legally insufficient to establish constructive abandonment, the divorce grounds plaintiff had pled. Thereafter, plaintiff filed complaints for divorce in New Jersey in 2001, 2002, and 2003, all of which were dismissed for lack of jurisdiction because plaintiff was found not to be a bona fide resident of this state. The present matter commenced on February 24, 2005, when plaintiff filed a complaint for divorce alleging separation. Defendant answered the complaint and filed a counterclaim for divorce alleging, among other bases for relief, desertion.
The parties testified during the three-day bench trial. The only other witness appearing was defendant's treating chiropractor, Albert Yuseffi, D.C., who testified regarding defendant's treatment for injuries sustained after an automobile accident.
The trial court entered findings on the issues of jurisdiction and each party's respective cause of action, determining sufficient statutory proofs were presented to enter a dual final JOD. The collateral issues then resolved by the trial judge included defendant's request for alimony and payment of counsel fees, and the equitable distribution of the former marital home and the parties' retirement assets.
The facts relevant to these issues are taken from the court's oral decision and the parties' trial testimony. Defendant, age fifty-five, suffered injuries in an automobile accident on February 22, 2000. Prior to the accident, defendant had held full-time supervisory positions for various employers. Her last employment consisted of two part-time jobs in the field of merchandizing, working fifty hours per week, earning an average salary of $11 per hour. After the accident, defendant received worker's compensation of $700 per month and recovered a personal injury settlement of $14,000 in 2004. Defendant also recovered a personal injury award of $30,000 in 1996.
Defendant stated she takes prescription medication for neck and jaw pain and felt she was physically unable to work. Defendant explained that due to her limited income, she borrowed funds from family members to aid the payment of expenses, *663 including her legal fees. The trial court fixed defendant's monthly needs at $2500.
After a review of all evidence, the trial court found no evidential support for defendant's claim that she was unable to engage in gainful employment as a result of her automobile accident. The court further concluded defendant was capable of earning approximately $400 per week.
Plaintiff, age fifty-six, remained employed as a construction worker, earning significantly more income than defendant. His expenses of $5000 per month provided for his needs, the needs of his daughter born during his subsequent relationship, and those of the child's mother.
Against these factual findings, the trial court rejected defendant's claim for alimony, stating that "without spousal support, the parties will be able to maintain substantially the same lifestyle as established during the marriage."
As to equitable distribution, the trial judge noted that the former marital home, a two-family dwelling, purchased in 1979 for $79,000, located at 69-16 62nd Road, Middle Village, New York, was the most valuable asset acquired during the marriage. The court rejected the appraisal evidence submitted at trial, which suggested the current fair market value was anywhere from $580,000 to $895,000.
From the time of purchase, the parties resided in one unit while the other unit was rented. Each party contributed to the down payment and carrying charges of the realty during the marriage. After plaintiff left in 1993, defendant continued to reside in the marital home, paying all expenses, including $7000 in home repairs. Defendant acknowledged the mortgage and real estate tax expenses were paid using the rental receipts of $1150 per month, and that she retained all excess rental income. The mortgage was satisfied in 2004.
In addressing the equitable distribution of the former marital home, the trial court reviewed and weighed each factor enumerated in N.J.S.A. 2A:34-23.1. The trial court considered defendant's claim that she receive a disproportionate distribution of the marital residence's value because she alone maintained the realty since 1993, and funded its maintenance and repair. The trial judge observed defendant was neither economically harmed due to plaintiff's lack of contribution since separation nor financially advantaged because she solely reaped the benefit of the property's income while serving as its overseer. The trial judge additionally found the economic realities of the parties' financial circumstances, coupled with the requirement to satisfy plaintiff's equitable distribution interest, would not permit defendant to retain the realty. The court appointed an appraiser to determine the asset's value, ordered the home's sale, and an equal division of the net available proceeds received from sale.
Additionally, the parties' retirement assets were divided. On December 1, 2004, defendant began receiving a monthly retirement annuity of $304 through TIAA/CREF. Defendant had elected a survivor benefit for plaintiff, which provides him a monthly benefit of $79.57 if defendant predeceases him. The trial court ordered that defendant retain all right, title and interest in this asset.
Plaintiff holds interests in three Excavators Union Local 731 retirement plans, including a defined benefit pension, a defined contribution annuity fund, and a Welfare Fund annuity. The present value of the combined entitlements as of April 24, 1994, totaled $35,040.
Each party requested special consideration in the distribution of the pension assets. Defendant sought to value plaintiff's retirement assets as of February 24, 2005, the date the current action was filed, *664 not the date of plaintiff's first divorce filing. Plaintiff claimed a form of reimbursement, arguing that he paid approximately $18,000 for federal and state income taxes resulting from a $24,000 withdrawal from his annuity taken in 1991, to make improvements on the former marital home.
After evaluating the parties' arguments, the trial judge concluded that the "coverture period[,] for purposes of equitable distribution of plaintiff's pension [was] the date of marriage, September 21, 1974 through April 8, 1994," when plaintiff filed his first divorce petition in New York; and, she awarded each party fifty percent of the asset acquired during the period to be distributed by a QDRO. Plaintiff was not compensated for the tax debt he had paid.
Finally, as a result of the receipt of the equitable interest in the marital assets, each party was found to be financially able to satisfy his and her own counsel fees and costs, except that plaintiff was ordered to satisfy a $1000 counsel fee previously awarded to defendant.
On appeal, defendant asserts the trial court erred in denying her claims for alimony and payment of counsel fees, and in fixing the parties' respective equitable distribution interests in the former marital home and in plaintiff's pension.
"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12, 713 A.2d 390 (1998). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413, 713 A.2d 390.
In reviewing the alimony award, we reject defendant's challenge. The trial judge considered each factor enumerated in N.J.S.A. 2A:34-23b, and articulated with specificity her findings in reaching the conclusion that an award of alimony was unwarranted. We affirm the decisional rationale articulated in the trial court's oral decision dated February 28, 2006, which is supported by the substantial credible evidence in the record. See Robertson v. Robertson, 381 N.J.Super. 199, 206, 885 A.2d 470 (App.Div.2005); see also Reid v. Reid, 310 N.J.Super. 12, 22-23, 708 A.2d 74 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
We additionally reject defendant's arguments challenging the manner and method of equitably distributing the former marital home and the denial of defendant's request for an additional award of counsel fees. These conclusions were adequately supported by the evidence in the record and otherwise were within the proper exercise of the trial judge's discretion. See Gittleman v. Cent. Jersey Bank & Trust Co., 103 N.J.Super. 175, 179, 246 A.2d 757 (App.Div.1967) ("[I]n reviewing the exercise of discretion it is not the appellate function to decide whether the trial court took the wisest course, or even the better course, since to do so would merely be to substitute our judgment for that of the lower court."), rev'd on other grounds, 52 N.J. 503, 246 A.2d 713 (1968); see also Valentino v. Valentino, 309 N.J.Super. 334, 339, 707 A.2d 168 (App.Div.1998) (stating appellate review is narrow and determines whether the trial judge mistakenly exercised its broad authority to divide the parties' property).
Defendant's final challenge, regarding the equitable distribution of plaintiff's pension assets, focuses on the trial court's finding of the marriage end-date for purposes of fixing the coverture period. *665 Defendant contends the asset should be valued as of the date the instant action was commenced. We must decide whether the trial court mistakenly exercised its broad authority to divide the parties' property or whether the result reached was bottomed on a misconception of law or findings of fact that are contrary to the evidence. Valentino, supra, 309 N.J.Super. at 339, 707 A.2d 168; Wadlow v. Wadlow, 200 N.J.Super. 372, 382, 491 A.2d 757, (App. Div.1985).
It is well-settled that, upon dissolution of a marriage, New Jersey law allows for "an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by . . . either [party] during the marriage. . . ." N.J.S.A. 2A:34-23h. Pension benefits derived from the joint efforts of the parties are subject to equitable distribution. Moore v. Moore, 114 N.J. 147, 154-55, 553 A.2d 20 (1989). To determine an appropriate allocation of each spouse's respective interest in a pension, a coverture fraction is utilized. Faulkner v. Faulkner, 361 N.J.Super. 158, 165, 824 A.2d 283 (App.Div.2003). "The coverture fraction is the proportion of years worked during the marriage to total number of years worked." Eisenhardt v. Eisenhardt, 325 N.J.Super. 576, 580, 740 A.2d 164 (App.Div.1999).
Defendant argues that as a matter of law the marriage did not end until the last New Jersey complaint was filed, in which case the court erred in limiting the amount of defendant's pension acquired during the marriage to that sum accruing on a date prior to that filing.
In Painter v. Painter, 65 N.J. 196, 217, 320 A.2d 484 (1974), the Court first considered the meaning of the statutory phrase "during the marriage" to discern what assets were subject to equitable distribution. The Court concluded that, as a practical matter, the statute could not be applied literally, that is, from the date of the wedding ceremony to the entry date of a JOD. Ibid. The Court also rejected, as "unworkable," the utilization of an expansive interpretation of the phrase that would exclude from equitable distribution those assets "acquired after it could be shown that there was an irretrievable breakdown of the marriage." Ibid. Recognizing the inability to "establish with any reasonable precision when a breakdown of the marital relationship has become irretrievable," ibid., the Court adopted a pragmatic approach, fixing the marriage end date for purposes of determining what property will be eligible for distribution, as the date the complaint for divorce was filed. Id. at 218, 320 A.2d 484.
The Court remained mindful, however, that the rule established would not "provide certain and ready answers to all questions which may arise as to whether particular property is eligible for distribution" and that "[i]ndividual problems must be solved, as they arise, within the context of particular cases." Id. at 218 n. 7, 320 A.2d 484.
The Painter rule was later modified in those instances where the parties entered into a written or oral agreement to separate and distribute marital assets prior to filing a complaint for divorce. See DiGiacomo v. DiGiacomo, 80 N.J. 155, 159, 402 A.2d 922 (1979); Smith v. Smith, 72 N.J. 350, 361-62, 371 A.2d 1 (1977); Carlsen v. Carlsen, 72 N.J. 363, 370-71, 371 A.2d 8 (1977). However, a lengthy separation accompanied by the division of some assets and the payment of support was found insufficient to support a conclusion that the marital partnership terminated prior to the date of a divorce complaint. Brandenburg v. Brandenburg, 83 N.J. 198, 207, 416 A.2d 327 (1980).
*666 Again, in Portner v. Portner, 93 N.J. 215, 216, 460 A.2d 115 (1983), the question of what marks the end of the parties' marriage arose. There the plaintiff wife filed for separate maintenance in New Jersey and the defendant husband filed a complaint seeking divorce in Pennsylvania, which was dismissed for lack of prosecution. Ibid. The plaintiff then amended her New Jersey complaint to demand divorce. Ibid. The Court reversed our holding, which had concluded that the terminal date of the marriage was the date the defendant filed his Pennsylvania complaint for divorce, stating:
The Painter rule encompasses more than the mere filing of an unmeritorious complaint for divorce. We hold that under the Painter rule in order for a divorce complaint to mark the end of the marriage for the purposes of equitable distribution, the complaint must commence a proceeding which culminates in a final judgment for divorce.
. . . .
There are . . . very practical and sensible reasons why the trial court should not treat the unilateral filing of a spurious complaint as marking the end of the marriage for equitable distribution purposes. To do so would involve the court in a consideration of a myriad of issues such as the reason for filing of the complaint, the reason for its dismissal, and the relationship of the parties after its dismissal. . . . We adopted the Painter rule to avoid the necessity of the court and the parties spending inordinate amounts of time and money in seeking the ever-elusive date when their marriage truly ended.
[Portner, supra, 93 N.J. at 220-23, 460 A.2d 115.]
These cases persuade us that the Painter rule remains the most practical rule to ascertain when a marriage has ended for the purposes of determining those assets acquired during the marriage and therefore, subject to equitable distribution. Generally, property qualifies for equitable distribution "when it is `attributable to the expenditure of effort by either spouse' during marriage," Pascale v. Pascale, 140 N.J. 583, 609, 660 A.2d 485 (1995)(quoting Painter, supra, 65 N.J. at 214, 320 A.2d 484), and "for purposes of the equitable distribution of marital assets, a marriage is deemed to end on the day a valid complaint for divorce is filed that commences a proceeding culminating in a final judgment of divorce." Portner, supra, 93 N.J. at 225, 460 A.2d 115; see also Heller-Loren v. Apuzzio, 371 N.J.Super. 518, 530, 853 A.2d 997 (App.Div.2004).
"While these rules govern the eligibility of assets for equitable distribution, they do not prescribe the manner of that distribution." Brandenburg, supra, 83 N.J. at 210, 416 A.2d 327. Employing the three-step analysis articulated in Rothman v. Rothman, 65 N.J. 219, 232, 320 A.2d 496 (1974), once the trial judge decides what specific property of each spouse is eligible for distribution, she must then determine its value for purposes of such distribution, and decide the most equitable allocation between the parties after analysis of the statutory factors set forth in N.J.S.A. 2A:34-23.1. Rothman, supra, 65 N.J. at 232, 320 A.2d 496. It is in that process that the trial court would consider a lengthy marital separation, recognizing "[t]he contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property." N.J.S.A. 2A:34-23.1i; see also Brandenburg, supra, 83 N.J. at 210, 416 A.2d 327.
We remain mindful that "the division of property upon divorce is responsive to the concept that marriage is a shared *667 enterprise, a joint undertaking, that in many ways it is akin to a partnership," Rothman, supra, 65 N.J. at 229, 320 A.2d 496, which values "[t]he nonremunerated efforts of raising children, making a home, performing a myriad of personal services and providing physical and emotional support . . . among other noneconomic ingredients of the marital relationship. . . ." Carr v. Carr, 120 N.J. 336, 347, 576 A.2d 872 (1990) (quoting Gibbons v. Gibbons, 174 N.J.Super. 107, 112-13, 415 A.2d 1174 (1980)). Marital assets acquired in the course of that joint undertaking fairly should be included in the marital estate subject to equitable distribution. Logic also dictates that assets acquired after that enterprise or partnership ceases should not be so included.
In this matter, the problems posed in Painter, Brandenburg, and Portner in demarcating the end of the parties' marriage are not presented. The facts here provide "incontrovertible evidence," Smith, supra, 72 N.J. at 361, 371 A.2d 1, that the marital partnership terminated prior to the filing of the New Jersey divorce complaint, allowing for the pinpointing of the time this marriage "irretrievably broke-down." Specifically, not only was a contested divorce action filed and trial held, but also after entry of the New York JOD, defendant remarried. These facts evidence more than a "mere physical separation," see Brandenburg, supra, 83 N.J. at 207, 416 A.2d 327, and it is without question that the New York divorce action was filed to end the marriage, not for the "manifestly unfair" purpose of terminating defendant's interest in plaintiff's pension assets. Portner, supra, 93 N.J. at 221, 460 A.2d 115. No clearer fact of the present marriage's breakdown could be presented than plaintiff's remarriage, such that the mechanical application of the Painter bright-line rule works an injustice. See also Zappala v. Zappala, 222 N.J.Super. 169, 172-74, 536 A.2d 308 (App.Div. 1988).
We thus conclude that the facts of this case present another exception to the Painter rule and accordingly, we affirm the trial court's opinion.
Affirmed.