**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4105-18T2

T.J.,

        Plaintiff-Appellant/
        Cross-Respondent,

v.

M.J.,

        Defendant-Respondent/
        Cross-Appellant.

_____

Submitted September 30, 2020 – Decided December 2, 2020

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0468-18.

Townsend Tomaio & Newmark, LLC, attorneys for appellant/cross-respondent (Gregory A. Pasler, on the briefs).

The DeTommaso Law Group, LLC, attorneys for respondent/cross-appellant (Taryn R. Zimmerman and Katrina M. Xyloportas, on the briefs).

PER CURIAM

Plaintiff, the former husband, appeals from certain provisions of an Amended Dual Judgment of Divorce (AJOD). He challenges the alimony award, his obligation to pay the college expenses of the parties' daughter, and his responsibility for paying the parties' 2018 income taxes. Defendant, the former wife, cross-appeals, contending that the family court erred in calculating her child support obligation and in awarding plaintiff certain credits.[1]

The AJOD was entered following a five-day trial and the court supported its rulings with written findings of fact and conclusions of law. Having reviewed the record, we affirm the AJOD in all respects except for the child-support award. We remand that one issue for recalculation.

I.

The parties were married in 1990, and twenty-seven years later in November 2017, plaintiff filed for divorce. The parties agreed that the November 27, 2017 filing date would be the date used for calculations regarding the end of their marriage.

_____

[1] We use initials in the caption to protect the privacy of the litigants and preserve the confidentiality of certain records because we discuss some of their financial circumstances. See R. 1:38-3(d).

Defendant and plaintiff have three children: a son born in January 1996; a son born in February 1998; and a daughter born in May 2001. The sons are both emancipated, and the daughter is currently nineteen years old and attending college.[2]

During their marriage, plaintiff was the primary wage earner and defendant took on the responsibilities of caring for the children and managing the non-financial aspects of the household. Plaintiff is fifty-nine years old and has held several senior positions at financial institutions. Currently, he is a Managing Director at Goldman Sachs. During the last five years of the marriage, plaintiff's total annual compensation averaged just over $1,170,000. His compensation at Goldman Sachs included a base salary of $400,000, a bonus, which in the last two years of the parties' marriage averaged over $450,000 per year, and restricted stock units.

Defendant is fifty-five years old and is a certified public accountant who stopped practicing as an accountant in 1998. As already noted, she did not work outside the home for the last twenty years of the parties' marriage. At the time

---

[2] At the time of the trial in 2019, the second son was in his senior year of college. We assume he graduated and is now emancipated.

A-4105-18T2

of the trial in 2019, defendant was about to finish her master's degree in child advocacy and hoped to find employment working with children in crisis.

The parties accumulated significant assets during their marriage, including three homes, financial investments, and retirement accounts. With the assistance of their counsel, the parties were able to resolve many of the issues concerning equitable distribution. The remaining issues were determined at trial.

In 2019, following almost two years of litigation, the unresolved issues were tried before the family court. Each party testified and numerous exhibits were submitted into evidence. The parties stipulated to certain facts and submitted a report from a forensic accountant who had analyzed the compensation received by plaintiff in the last five years of the marriage.

On May 15, 2019, after considering the testimony and evidence, the family court entered the AJOD and issued a written opinion setting forth its findings of fact and conclusions of law. The court found that defendant was entitled to "open durable alimony" based on the parties' twenty-seven-year marriage and that defendant had not worked outside of the home during the last twenty years of the marriage. In determining the amount of alimony, the court found that plaintiff's compensation averaged over $1 million per year; defendant

A-4105-18T2

was hoping to work with children in crisis and, therefore, it was reasonable to impute $40,000 in income to her; defendant was credible concerning the parties' marital lifestyle and plaintiff was not credible; and to maintain her marital lifestyle, defendant would need $13,000 per month. Accordingly, the court awarded defendant $13,000 per month in alimony.

The court also found that the parties had regularly saved money during their marriage. Consequently, the court awarded defendant $4000 per month for savings. Thus, the total monthly alimony was $17,000.

As part of their stipulated facts, the parties agreed that there were no parenting time issues for their sons. They had also previously entered into a parenting time agreement, under which they shared parenting time with their daughter, and plaintiff was designated the parent of primary residential custody. Using the income amounts it had already determined and the child support guidelines, the court calculated that defendant should pay $36 per week in child support to plaintiff.

Addressing college expenses for the daughter, the court noted that the parties had stipulated that plaintiff had set up 529 accounts for each child. At the time of the trial, the second son was in his last year of college and had over

$33,000 in his account and the daughter was in her last year of high school and had over $180,000 in her 529 account.

The court then found that plaintiff had controlled the 529 accounts and had chosen to give thousands of dollars to the children instead of putting that money into the 529 accounts. Consequently, the court found that plaintiff should be responsible for the college expenses of the daughter that were not covered by her 529 account or grants and loans.

The parties also asked the court to resolve the dispute over the payment of the 2018 taxes. The court found that during the marriage, plaintiff had always paid the annual tax obligation from his income. Therefore, the court ordered plaintiff to be responsible for the 2018 income tax obligation.

Finally, relevant to this appeal, the court found that plaintiff was entitled to credits of just over $66,000 to account for the November 27, 2017 termination date of the marriage, several withdrawals from joint accounts taken by defendant, a tuition reimbursement, and a double payment by plaintiff of defendant's credit card.

The family court's rulings were memorialized in the AJOD. Plaintiff appeals from certain provisions of the AJOD and defendant cross-appeals from other provisions.

A-4105-18T2

## II.

Our review of a trial court's factual findings is limited. Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (citing Cesare v. Cesare, 154 N.J. 394, 411 (1998)). "Generally, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare, 154 N.J. at 411-12). "In matrimonial matters, this '[d]eference is especially appropriate when the evidence is largely testimonial and involves questions of credibility[.]'" Ibid. (alternation in original) (quoting Cesare, 154 N.J. at 412). Accordingly, we will not overturn an alimony award, child support award, or equitable distributions unless there was a clear abuse of discretion, a failure to correctly apply governing legal principles, or the factual findings were not supported by the record. See Genovese v. Genovese, 392 N.J. Super. 215, 222-23 (App. Div. 2007) (citing Valentino v. Valentino, 309 N.J. Super. 334, 339 (App. Div. 1998)) (recognizing that equitable distribution will be upheld unless the trial court "mistakenly exercised its broad authority to divide the parties' property"); see also Elrom, 439 N.J. Super. at 434, 438 (reviewing a trial court's imputation of income and child support determination for an abuse of discretion); Robertson v. Robertson, 381 N.J. Super. 199, 206 (App. Div. 2005) (reviewing a trial court's award of alimony for an abuse of discretion).

A-4105-18T2

On his appeal, plaintiff contends that the family court erred in (1) awarding defendant $17,000 per month in alimony; (2) requiring him to pay any unfunded portion of the daughter's college expenses; and (3) requiring him to be solely responsible for the 2018 income tax obligation. On her cross-appeal, defendant challenges (4) her child support obligation; and (5) two of the credits awarded to plaintiff.

1. Alimony

Alimony is designed to allow a spouse who has been supported during the marriage to, as best as possible, maintain the marital standard of living. See Gnall v. Gnall, 222 N.J. 414, 429 (2015). The type and amount of alimony is governed by factors defined by the Legislature in N.J.S.A. 2A:34-23(b). The Legislature has identified twelve factors that a court must consider, as well as "[a]ny other factors which the court may deem relevant." N.J.S.A. 2A:34-23(b). The Legislature has also required that the court make "specific findings on the evidence" regarding the statutory factors relevant to an alimony award. N.J.S.A. 2A:34-23(c).

Plaintiff contends that the family court failed to analyze the factors governing an award of alimony. In particular, he disputes his ability to pay the alimony from his base salary. We are not persuaded by his arguments.

In its written opinion, the trial court did not conduct a factor-by-factor analysis of the statutory factors, but the court did discuss each of those factors in the opinion and it did make an award consistent with the statutory factors. The court expressly identified and quoted verbatim the statutory factors set forth in N.J.S.A. 2A:34-23(b). The court then discussed each of those factors, although it did not always cite to the statute during its analysis.

The court discussed and analyzed the parties' actual need and ability to pay alimony. See N.J.S.A. 2A:34-23(b)(1). In that regard, the court made findings that plaintiff earned annual compensation of over $1 million, defendant had an ability to earn $40,000, and therefore plaintiff had an ability to pay alimony and defendant needed alimony to support the marital lifestyle. In making those findings, the court also assessed the parties' credibility. The court expressly found that plaintiff was not credible regarding the expenses of the marital lifestyle and defendant was credible. Consequently, the court accepted defendant's proofs that she needed $13,000 in alimony per month to maintain the marital lifestyle.

The court also discussed the twenty-seven-year duration of the marriage, the age and physical health of the parties, the earning capacity, education level and employability of the parties, and the length of defendant's absence from the job market. Accordingly, the court addressed the factors set forth in N.J.S.A. 2A:34-23(c)(2), (3), (5), and (6). The court also discussed that defendant was in the process of obtaining her master's degree in child advocacy and her ability to find employment. See N.J.S.A. 2A:34-23(b)(8).

In addition, the court spent considerable time analyzing the standard of living established in the marriage and the likelihood that each party could maintain a comparable standard of living. N.J.S.A. 2A:34-23(b)(4). In conducting that analysis, the court referenced the parties' case information statements and the monthly expenses identified by each of the parties. As already noted, the court found that plaintiff was not credible concerning the marital monthly expenses and his assessment of defendant's ability to maintain the marital lifestyle on his proposed alimony amount of $4500 per month. By contrast, the court found defendant to be credible on the marital lifestyle and accepted that she had established a marital lifestyle standard of expenses of $13,000 per month.

In its opinion, the court also discussed the parental responsibilities for the children, the history of the financial and non-financial contributions to the marriage, the equitable distribution of the marital property, and the income available to both parties through investments. See N.J.S.A. 2A:34-23(b)(7), (9), (10), and (11).

While the court did not expressly address the tax treatment and consequences of the alimony award, that issue is now governed by the Tax Cut and Jobs Act of 2017. Under that Act, alimony is not tax deductible to the payor spouse and not considered taxable income to the payee spouse. Pub. L. No. 115-97, § 11051(b), 131 Stat. 2054, 2089-90 (2017).

Plaintiff spends considerable time arguing that the family court did not appropriately consider his ability to pay alimony. In making those arguments, he focuses on his base salary of $400,000 per year. He contends that if you considered just his base salary and you assume that he pays forty percent in taxes, he has a monthly income of $20,000. That is, $400,000 less forty percent equals $240,000, divided by twelve equals $20,000. He argues that it is unfair that he should have to pay $17,000 of that to defendant.

Plaintiff also contends that the trial court erred in directing him to pay his alimony through wage garnishment because, under his analysis, he is paying

eighty-five percent of his monthly net take-home pay to defendant. He argues the garnishment is a violation of 15 U.S.C. § 1673, which establishes the maximum allowable garnishment level as sixty-five percent of an obligor's disposable earnings.

The flaw in plaintiff's argument is that he completely ignores his annual bonus. 15 U.S.C. § 1672(a) defines "earnings" to include bonuses. The undisputed evidence at trial established that in 2018, 2017, and 2016 plaintiff's annual bonuses were $505,000, $418,950, and $486,674 respectively. As already noted, plaintiff receives other forms of compensation and there was substantial credible evidence supporting the court's finding that plaintiff's annual income exceeded $1 million. The substantial credible evidence amply supports that plaintiff had the ability to pay alimony in the amount of $17,000 and the garnishment did not violate 15 U.S.C. § 1673.

Plaintiff also spends considerable time arguing about what defendant could earn from the investment of the equitable distributions she received. In making his arguments concerning what defendant might earn, plaintiff ignores the substantial investment income he would be able to earn. The family court was clearly aware of the assets that the parties had accumulated during their

marriage. Accordingly, we discern no error or abuse of discretion in the family court's rulings on alimony.

Plaintiff also challenges the $4000 portion of the alimony award for savings. He contends that during the marriage the parties used his base income of $400,000 for their living expenses and their savings and investments were paid out of his annual bonus.

"A spouse's need for savings has long been recognized as a component of alimony[.]" Lombardi v. Lombardi, 447 N.J. Super. 26, 38 (App. Div. 2016) (citing Martindell v. Martindell, 21 N.J. 341, 354 (1956)). Accordingly, an alimony award can appropriately include a reasonable component of savings to protect the supported spouse "against the day when alimony payments may cease because of [the death of the supporting spouse] or change in circumstances[.]" Davis v. Davis, 184 N.J. Super. 430, 437 (App. Div. 1982) (quoting Khalaf v. Khalaf, 58 N.J. 63, 70 (1971)).

The family court found that the parties had saved tens of thousands of dollars each year during the last five years of their marriage. Accordingly, an award of $4000 per month in savings to defendant was supported both by the law and the substantial credible evidence presented at trial.

2. College Contribution

"The Legislature and our courts have long recognized a child's need for higher education and that this need is a proper consideration in determining a parent's child support obligation." Gac v. Gac, 186 N.J. 535, 542 (2006). In Newburgh v. Arrigo, the Court set forth a non-exhaustive list of twelve factors courts should consider when evaluating a claim for college contribution. 88 N.J. 529, 545 (1982). The Legislature codified those factors in N.J.S.A. 2A:34-23(a). In establishing college contribution, a court should not base its decision on a single factor. Instead, the court should consider all the enumerated factors. Gottlieb v. Gottlieb, 399 N.J. Super. 295, 309 (App. Div. 2008).

Plaintiff argues that the court failed to consider all the Newburgh factors and it was reversible error to require him to pay the daughter's college expenses. We disagree.

Both parents agreed that the daughter would be going to college. In its opinion, the family court discussed the amount of money in the daughter's 529 account, the standard of living and economic circumstances of the parents, the sources of income and assets of each parent, the earning ability of each parent, that the child would be going to college, and the age of the child and the parents.

Accordingly, the court was aware of and considered the <u>Newburgh</u> factors and the statutory factors set forth in N.J.S.A. 2A:34-23(a).

At the time of trial, the oldest son had already graduated from college, the second son was in his last year of college, and the daughter was about to enter college. The parties stipulated that the second son and daughter had 529 accounts, with $33,000 in the son's account and just over $180,000 in the daughter's account. The parties have informed us that the daughter is now attending college at the Kelley School of Business at the University of Indiana. They did not tell us what her tuition and college costs are. What is clearly established in the record is that plaintiff controlled the 529 accounts and that he has the ability to pay for any part of the daughter's education that is not covered by her 529 accounts or loans that the daughter may take out. In other words, this issue needs to be evaluated in context.

3.     The 2018 Tax Obligation

At trial, plaintiff contended that the parties should file their 2018 federal and state taxes jointly and defendant should be responsible for forty-five percent of the parties' income tax obligations. After hearing both parties' testimony, the family court ruled that plaintiff would be solely responsible for the 2018 income

tax obligation.  The court found that during the marriage, plaintiff had paid the annual tax obligations out of his income.

After the court made its decision the parties, on their own, agreed that they would file a joint tax return for 2018 and that plaintiff would pay the 2018 tax liability.  The parties dispute whether that subsequent agreement settled the tax issue.  Plaintiff indisputably gained a significant tax saving by filing a joint return with defendant in 2018.  There is also substantial credible evidence supporting the court's finding that during the marriage plaintiff used his income to satisfy the parties' tax obligations.

Accordingly, we discern no basis to disturb either the family court's ruling on this issue or the parties' subsequent agreement on how they would handle the 2018 tax obligation.  Moreover, the arguments made by the parties concerning this issue lack sufficient merit to warrant further discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

4.    Child Support

Both parties agree that the family court made an error in calculating child support.  Under the Tax Cut and Jobs Act of 2017, which became effective January 1, 2019, alimony is not tax-deductible to the payor and is not taxable income to the payee.  Pub. L. No. 115-97, § 11051(b), 131 Stat. 2054, 2089-90

(2017).  Accordingly, under the child support guidelines, alimony that is non-taxable and non-deductible should be entered on lines 4A and 4B of the child support guidelines.  See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX to R. 5:6A, www.gannlaw.com (2020).

The family court entered the alimony paid on line 1B and the alimony received on line 1C.  We therefore remand for the limited purpose of recalculating the child support by entering the alimony on the appropriate line of the guidelines.  Because we have affirmed the family court's rulings on the income used and the alimony awarded, on remand neither party should be permitted to reargue issues that have already been decided.

We also add a comment.  The family court calculated defendant's child support obligation to be $36 per week.  Given the income levels of the parties, the equitable distribution and the alimony involved, the child support obligation is a relatively small amount of money.  Moreover, the daughter is now at college and child support needed to be recalculated.  The parties and their counsel should have been able to work this issue out and their failure to do so does not demonstrate good faith and raises questions about their abilities to objectively evaluate issues.

A-4105-18T2

5.     The Credits

Defendant challenges two credits awarded by the family court to plaintiff: (1) a $15,000 credit for pre-judgment withdrawals that she took from the parties' joint bank account; and (2) a $4584 credit for a double payment by plaintiff of her credit card.[3]  Defendant argues that those credits are inconsistent with the family court's finding that plaintiff was not entitled to credits for pendente lite expenses incurred by defendant and not supported by substantial credible evidence.

We disagree.  These arguments lack sufficient merit to warrant a discussion in a written opinion.  See R. 2:11-3(e)(1)(E).  We add the comment that the parties engaged in extensive litigation and a five-day trial where they both had the opportunity to testify and submit numerous exhibits.  The record demonstrates that the family court was presented with these issues and accorded

---

[3]  The family court awarded other credits to plaintiff, but defendant has made no arguments about those other credits in her brief on appeal.  Accordingly, we deem those issues waived and decline to address them.  See Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 318-19 (App. Div. 2017) ("An issue not briefed on appeal is deemed waived.") (quoting Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011)); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020) (same).

them their due consideration.  We discern no error in the family court's evaluation of these two credits.[4]

6.    Conclusion

In summary, we affirm the AJOD in all respects, except the child support award.  We remand that one issue for a recalculation of child support using the income and alimony found by the family court.

Affirmed in part, reversed and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] In her reply brief, defendant makes arguments about her due process rights and her right to confront plaintiff on the credit card issue.  Evaluated in context, these arguments lack merit because defendant was accorded all the process that she was due.