<div style="border:1px solid black">

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1700-19

JAMES THOMAS,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

SHEYEAST THOMAS,

      Defendant-Respondent/
      Cross-Appellant.

_____

        Argued March 8, 2021 – Decided May 3, 2021

        Before Judges Currier and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-2371-18.

        John P. Dell'Italia argued the cause for appellant (Dell'Italia & Santola, attorneys; John P. Dell'Italia, on the briefs).

        Thomas J. Bean argued the cause for respondent (Previte & Nachlinger, PC, attorneys; Thomas J. Bean, on the briefs).

PER CURIAM

The parties each appeal from certain aspects of the November 19, 2019 order and final judgment of divorce. After a review of the respective contentions in light of the record and applicable principles of law, we affirm.

The parties were married in 2009. Their only child, born in 1999, was emancipated at the time of the divorce proceedings. When the parties separated in 2013, plaintiff moved to Pennsylvania where he purchased a home.

Plaintiff filed a complaint for divorce in May 2018. Thereafter, the court granted defendant's motion for pendente lite support in September 2018 and modified it in December 2018.

The parties were unsuccessful in settling their issues and they appeared for trial with counsel on July 22, 2019. As the proceedings began, the Family Part judge noted that plaintiff's counsel had filed a motion to be relieved as counsel and that plaintiff "[did] not want [his attorney] to continue to represent him . . . ." The judge asked plaintiff if this information was correct and he responded affirmatively.

The judge then inquired whether plaintiff intended to find another attorney or represent himself. Plaintiff responded that he "want[ed] to get some additional attorney help" but had not yet spoken to another lawyer. He told the

2

judge that he "[did not] know what to do." The following exchange then took place:

> THE COURT: You're not . . . required to have [c]ounsel. You can, we have plenty of people who . . . come into this [c]ourt and represent themselves. We have plenty of people . . . in your situation, where . . . you don't have a lawyer, the other side does. I personally think it's always great to have a lawyer, because I think . . . it's worth . . . the expense to have a lawyer represent you, who is familiar with the . . . procedures. But we have plenty of people who come in who are self-represented. And . . . just because someone has a lawyer doesn't mean that they . . . automatically win. I . . . have a responsibility to be fair to both sides, and I try to be fair. So, just because you don't have a lawyer doesn't mean you're going to lose.
>
> But if . . . you want to have a lawyer, I'll give you the opportunity. But it's going to have to be in a very short window. It'[s] going to have to be a very short period of time. And that, whoever . . . you retain, that lawyer is going to have to be told by you that they have to . . . be ready on the date that I give them. So, in other words, they're going to have to learn about the case and . . . come up to speed quickly. I'll do that for you.
>
> [PLAINTIFF]: I'll try it myself. I have nothing to lose. I'll . . . try it. I'll do it. . . .
>
> THE COURT: Hold on. If you want to . . . have a lawyer, I'll give you the time. It's going to have to be a short window. That's all I'm trying to tell you.
>
> [PLAINTIFF]: No.

A-1700-19

THE COURT: Okay. I will let you go out, and you're going to have to pay that lawyer, and that lawyer is going to have to be ready on the date that I give him . . . or her. Do you want to go . . . out and hire another lawyer?

[PLAINTIFF]: No. I'll represent myself.

When the judge asked plaintiff's counsel why she wished to withdraw, she asserted that "[c]ommunication has definitely broken down, and the attorney/client relationship here is irretrievably broken at this point." She further represented that "[plaintiff] specifically advised that he wants to release me as his [c]ounsel, that he wants to proceed with a trial, and further, that he does not have confidence in my abilities to represent his interest at trial." Defendant did not oppose the motion.

The court granted the motion, finding the attorney-client relationship had "broken down" and plaintiff no longer wanted the attorney to represent him. The court further noted plaintiff's counsel had submitted a trial brief which laid out the disputed issues. Plaintiff did not request the opportunity to retain new counsel at any time during the trial.

The judge questioned plaintiff extensively about his position on alimony – plaintiff was not seeking alimony from defendant and he did not think he should have to pay alimony because the parties had been separated for more than

six years. Plaintiff testified that he worked for Amtrak, earning a yearly income between $140,000 and $170,000 depending on bonuses. He stated defendant worked as a receptionist and made $35,000 per year.

Plaintiff described the vacations the parties took during their marriage and the cars he and his wife owned. He gave estimates regarding the value of two vehicles he possessed. The parties did not have any stocks, bonds, or other investments.

In discussing the Pennsylvania home, plaintiff stated he purchased it in his own name after the parties separated and he was solely responsible for the mortgage payments. Defendant had not made any financial contributions to the home and did not live there.

On cross-examination, defendant's counsel presented plaintiff with his 2018 W-2 reflecting a gross income of $226,000. Plaintiff also agreed he had retirement benefits from Amtrak.

When defendant testified, she advised the court she was seeking six years of alimony in the amount of $793 weekly, fifty percent of the equity in the Pennsylvania property, and fifty percent of plaintiff's pension account accrued during the marriage. She also requested an award of counsel fees, stating plaintiff had refused to participate in good faith settlement discussions.

A-1700-19

Defendant testified that her income for the previous year was approximately $34,000. After plaintiff cross-examined defendant, the trial concluded.

On November 12, 2019, the judge issued a well-reasoned, thorough oral decision. He reiterated his decision to grant plaintiff's counsel's motion to be relieved, stating:

> [A]t plaintiff's request I relieved [his counsel] on the eve of trial. [Counsel] filed a motion, and also . . . plaintiff no longer wanted [counsel] to represent him, so I relieved her at the time of trial.
>
> At that time I also advised . . . plaintiff that I would give him an opportunity if he wanted to, to hire another lawyer. It would have to be on a very short notice and the lawyer would have to be prepared to go at the next trial date I intended to give. But . . . plaintiff was very clear that he did not want to hire another lawyer, he wanted to represent himself. He didn't want to pay for another lawyer and he was prepared to start the trial.

The judge further advised that plaintiff had retained counsel in September 2019, after the trial. The judge permitted new counsel to obtain a copy of the trial transcript and submit a brief in addition to the brief submitted by plaintiff's prior attorney.

In assessing the parties' credibility, the judge found plaintiff to be a "serious . . . [and] hardworking man" but described his testimony as "disjointed." The judge found plaintiff's position on alimony was unreasonable and that he

6

was "very argumentative and didn't respond to the questions" defendant's counsel asked on cross-examination. Ultimately, the judge found plaintiff was "a very average witness."

The judge also concluded defendant was an average witness, "lacking credibility" and he "did not believe" certain aspects of her testimony. In short, the judge stated that neither party "was any better than the other."

Turning his attention to defendant's request for alimony, the judge analyzed the fourteen factors enumerated in N.J.S.A. 2A:34-23(b). He indicated his analysis would only focus on limited durational alimony because defendant requested this type of alimony as the parties were only married for nine years and separated for almost four years.

Under factor one—the actual need and ability of the parties to pay—the judge found defendant needed alimony and plaintiff "ha[d] the ability to pay." The court's finding was grounded in the income disparity between the parties. The judge also "considered but wasn't controlled by" defendant's credit card debt as she "did not do a good job providing information about whether those debts were marital debts or debts that she ha[d] accumulated once plaintiff moved out of the marital home."

A-1700-19

The judge thoroughly considered each of the prescribed factors in turn, finding some not applicable to the parties' circumstances. In analyzing factor thirteen—the nature, amount, and length of pendente lite support paid, if any—the judge noted the initial award to defendant was $901 a week before the court reduced the figure to $750. In addition, the judge observed that plaintiff was in arrears on the revised pendente lite order, owing $11,000. He stated that he did not conduct a Mallamo[1] analysis because neither party requested it and he believed the modified pendente lite amount was a "pretty solid figure that was reasonable."

The court awarded defendant four years of limited durational alimony in the monthly amount of $3263 – $39,160 per year. The judge advised that he considered a longer term than four years but declined to extend the period of alimony because of plaintiff's credible testimony that the parties had been separated for several years before he filed for divorce. The judge supported his decision by stating:

> I find that . . . plaintiff has very high income.
>
> . . . .
>
> I also find that it's likely that . . . plaintiff will continue to earn at least $200,000 per year barring any

---

[1] Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995).

A-1700-19

unforeseen circumstances, and perhaps even higher with bonuses.

In addition I find that defendant's income will likely remain at or near $35,000. I also find that the parties had a relatively short-term marriage of only [nine] years and now they've been separated for almost [four] years.

In a similar fashion, the Family Court judge addressed the equitable distribution issue, explaining his analysis was governed by the sixteen factors under N.J.S.A. 2A:34-23.1. Again, the judge analyzed each factor, making findings on each one. Many of the factors overlapped with the findings from the alimony analysis, several factors were either inapplicable or the judge concluded the parties had not presented sufficient information to support a determination.

Under factor thirteen, the judge noted the $113,000 remaining on plaintiff's mortgage and defendant's assertion that she had $50,000 in credit card debt and indicated it "wasn't a dominant factor but it was a factor that [he] thought about in alimony."

In considering factor sixteen, the judge stated:

Yes, it's a short-term marriage. . . . [P]laintiff moved out of New Jersey to Pennsylvania in December of 2013 as I've already mentioned. Plaintiff purchased a new home with his own funds. The parties have been separated for [four] years and defendant has received at

9

least what the [c]ourt considers to be fair, I don't want to use the word generous but certainly a fair alimony award. Those are all additional factors that I'm considering.

In awarding defendant twenty percent of the equity in the Pennsylvania property, the judge explained:

All right, first of all, [plaintiff] has a house in East Stroudsburg, Pennsylvania. The house was bought in December of 2013 by . . . plaintiff. . . . [P]laintiff[,] the [c]ourt finds[,] placed a down payment on the home using his own funds. He was credible on that issue.

The [c]ourt notes that . . . all of the ownership documents reflect . . . plaintiff's name as the sole owner, not . . . defendant. The [c]ourt finds . . . plaintiff has paid the monthly mortgage for the last several years, the last [five] years or so. Plaintiff lives there year-round.

The [c]ourt also finds defendant stays there infrequently. The [c]ourt did not find defendant credible that she stays there frequently. The [c]ourt finds plaintiff credible that defendant stays there infrequently, mostly during the weekends.

Defendant has not provided any economic contribution to the purchase of that home in Pennsylvania. The [c]ourt finds defendant did not make any improvements to the property in Pennsylvania. The [c]ourt finds that plaintiff did not give any of her funds to that home. The [c]ourt finds plaintiff did not take any steps to help improve the interior or exterior of the home through any work or sweat equity.

A-1700-19

The [c]ourt also finds . . . defendant's job is exclusively in Metuchen, New Jersey, or at least Central New Jersey. The [c]ourt finds that the home was not purchased with marital assets. The [c]ourt also finds that . . . her request to have a [fifty-fifty] share is not fair to . . . plaintiff. Therefore, the decision which will be announced in a minute will take all of those factors into consideration.

The [c]ourt notes that the value of the home . . . is $165,000. The current balance [owed on the mortgage] as of August 2019 was $113,000. The [c]ourt notes that it's now November 12, 2019, and obviously the mortgage will be less than that figure.

The [c]ourt . . . rules that the parties will determine the mortgage balance as of this date, November of 2019.

The value will be $165,000 which was, that was proofs supplied by plaintiff, and the current balance will be subtracted. From that net figure . . . defendant will be awarded only [twenty] percent of the equity. . . . [P]laintiff in his case and in the briefs supplied by his lawyers did not want to pay anything or did not want the [c]ourt to rule that defendant was entitled to any portion.

[D]efendant's position of course was that, . . . [she] should get [fifty] percent. The [c]ourt considered all of the arguments and the [c]ourt now makes the ruling that defendant will only be entitled to [twenty] percent of the equity, not [fifty] percent, [twenty] percent after the current mortgage balance is deducted.

The [c]ourt rules and the [c]ourt finds that this is fair and believes it's fair for the following reasons. First of all, we have a short-term marriage of only [nine] years. The [c]ourt . . . also factored in that plaintiff was living

11

alone for [four] years. I also find that I've given what I consider to be a relatively fair and substantial alimony award.

I also find that the house is the most substantial asset. I also find that . . . plaintiff is the one who has kept that asset up and has maintained and made all of the payments. I also find that defendant has not proven any contribution economic or otherwise. Therefore I believe a [twenty] percent figure is fair. The [c]ourt also understands and recognizes full well that to a very large extent any decision might be perceived as arbitrary, whether it's [ten] percent or [twenty] percent or [thirty] percent. The [c]ourt factored in . . . the short-term marriage and the fact that the parties have been separated for quite a period of time. There's no substantial science to this but I believe that factoring all of these things into consideration [twenty] percent is fair.

The court also ordered that each party would keep their own bank accounts as neither party had shown the existence of any joint accounts, and they would evenly split the marital coverture portion of defendant's 401(k).

The judge then addressed plaintiff's tier one and tier two pension benefits. The court agreed with the parties that the tier one pension was not subject to equitable distribution because it was "very similar" to federal social security benefits and its value could not be determined at that time. However, the court noted that defendant was entitled to any potential future survivor benefits. In contrast, the court found the tier two pension was subject to equitable

12

distribution.  The court ordered the parties to evenly split the marital coverture

portion of the pension.

In addressing the parties' respective vehicles, the court stated:

> The [c]ourt will note that there are two Kawasaki
> motorcycles.  The parties did not do a good job
> providing any information about the values of the
> vehicles other than plaintiff's testimony that the Audi
> . . . was purchased for [$]80,000 and now has a value
> of about [$]40,000.
>
> We didn't have any other proofs, we didn't have
> Kell[e]y Blue Book value or those kind of things.  So
> this is what the [c]ourt has done with regard to the
> vehicles. . . . [P]laintiff will keep the two Kawasaki
> motorcycles.
>
>     . . . .
>
> With regard to . . . plaintiff's Audi, it has equity of
> $40,000 according to plaintiff's testimony. . . .
> [D]efendant will receive $20,000 of this, . . . which
> represents one-half of the current value as of September
> 2019.  The [c]ourt finds that that car was purchased
> during the marriage with marital funds.
>
> Defendant will keep the motorcycle that she has.
> Defendant will also keep the Acura TL car that she has.
> However, with regard to the Acura TL that she has, . . .
> her lawyer will obtain a Kell[e]y Blue Book value for
> that vehicle.  And then the parties will evenly split the
> equity of that vehicle.  So they're going to split the
> equity in the Audi, they're going to split the equity in
> the Acura TL and they're each going to keep their
> motorcycles, plaintiff is going to keep two, defendant
> will keep one.

The court made additional rulings not challenged by the parties.

In considering defendant's request for attorney's fees, the judge stated he considered the factors under Rule 5:3-5. He concluded the "parties acted in good faith," adding that although plaintiff's original position on alimony was unreasonable, it did not rise to the level of bad faith. Moreover, the judge stated, defendant received a "fair and relatively substantial alimony award" and a "fair equitable distribution award . . . ." Therefore, in considering all of the circumstances, the judge found defendant was not entitled to an award of attorney's fees.

The court's rulings were memorialized in a November 14, 2019 order and judgment of divorce.

On appeal, plaintiff challenges the court's order relieving his trial counsel, and its rulings in the final judgment of divorce regarding alimony, the equitable distribution of the Pennsylvania property, his tier two pension, and the parties' vehicles. In a cross-appeal, defendant challenges the equitable distribution of the Pennsylvania property and the denial of her request for counsel fees.

In reviewing a non-jury trial, this court defers to a trial judge's factfinding when supported by adequate, substantial, and credible evidence. Cesare v. Cesare, 154 N.J. 394, 412 (1998). We do "not weigh the evidence, assess the

credibility of witnesses, or make conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008).

Where there is "satisfactory evidentiary support for the trial court's findings . . . [we] should not disturb the result . . . ." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012) (citing Beck v. Beck, 86 N.J. 480, 496 (1981)). Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412. A "trial judge who observes witnesses and listens to their testimony . . . is in the best position to make first-hand credibility judgments about the witnesses who appear on the stand." Slutsky v. Slutsky, 451 N.J. Super. 332, 344 (App. Div. 2017) (citing N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

Therefore, we will "not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort v. Inv. Ins. Co., 65 N.J. 474, 484 (1974)).

We begin by addressing plaintiff's argument that the trial judge mistakenly exercised his discretion in permitting trial counsel to withdraw on the day of

trial. He asserts the court should have given him more time to "contemplate and decide whether he wanted to hire another attorney."

We discern no mistaken exercise of discretion in the court's determination to relieve plaintiff's counsel. Counsel explained to the court that the relationship was "irretrievably broken," there was no longer any communication between herself and plaintiff, and plaintiff no longer wanted her services. Moreover, plaintiff himself affirmed to the court that he no longer wanted to be represented by counsel.

After its ruling, the court offered plaintiff an adjournment to retain new counsel. Plaintiff declined the proffered delay in the proceedings and stated he wanted to represent himself. The court confirmed plaintiff's intentions several times.

Moreover, counsel submitted a trial brief on plaintiff's behalf setting forth his position on the disputed issues. The court conducted an extensive inquiry of plaintiff and permitted him to cross-examine defendant. And, when plaintiff did retain new counsel two months after the completion of the trial, the court permitted new counsel to obtain a transcript and submit a closing brief.

Plaintiff was given numerous opportunities to adjourn the trial and retain new counsel. He declined the court's offers. He cannot now, in hindsight, after

A-1700-19

the court issued its decision, claim the court erred when it only complied with plaintiff's stated wishes – to undertake the trial self-represented.

In turning to the award of alimony, plaintiff contends the trial court abused its discretion in calculating the amount of alimony awarded to defendant because it "failed to take into consideration and apply the appropriate weight to multiple important, relevant factors."  We disagree.

"A Family Part judge has broad discretion in setting an alimony award and in allocating assets subject to equitable distribution."  Clark, 429 N.J. Super. at 71 (citation omitted).  "Of course, [as to alimony] the exercise of this discretion is not limitless[,]" and is "frame[d]" by the statutory factors set forth in N.J.S.A. 2A:34-23(b).  Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004).

A proper alimony award "assist[s] the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage."  Tannen v. Tannen, 416 N.J. Super. 248, 260 (App. Div. 2010) (quoting Steneken v. Steneken, 183 N.J. 290, 299 (2005)).  "[A] judge awarding alimony must methodically consider all evidence to assure the award is 'fit, reasonable and just' to both parties, N.J.S.A. 2A:34-23, and properly balances each party's needs, the finite marital resources, and

the parties' desires to commence their separate futures, N.J.S.A. 2A:34-23(c)."

Gnall v. Gnall, 432 N.J. Super. 129, 149 (App. Div. 2013).

Here, the trial judge explained that, given the short-term nature of the marriage, it would only focus on limited durational alimony. Thereafter, the court thoughtfully considered each of the fourteen factors under N.J.S.A. 2A:34-23(b) before rendering its decision. The court reasoned:

> [P]laintiff can afford this payment based upon his salary. The [c]ourt finds . . . defendant has the need. The [c]ourt finds that the parties enjoyed a lifestyle that can be described as middle-class to upper middle-class. Therefore, the [c]ourt placed serious consideration not only [on] the need and the ability to pay, but also the marital lifestyle.
>
> In addition the [c]ourt considered a higher term beyond the [four] years, but in the end . . . plaintiff prevailed to a point that the parties really have been separated for several years before the complaint was filed. I found that . . . plaintiff was credible.
>
> And therefore, I believe that [four] years at the rate that I just covered is fair, is very fair to both parties. But particularly I think this will help . . . defendant. It's a fair award for her.

The court's findings were supported by credible evidence in the record. There was a significant income disparity between the parties, with plaintiff making $226,000 in 2018 compared to defendant's $33,587.60. There was also ample evidence of the parties' "middle-class to upper middle-class[]" standard

of living from the parties' testimony about their "frequent vacations," "timeshares in exotic places[,]" weekly date nights going "out to dinner and maybe even a movie[,]" "several cars and motorcycles[,]" and health club memberships.

Plaintiff has not demonstrated a mistaken exercise of discretion. The trial judge correctly applied and considered the relevant statutory factors in rendering an alimony award that was within his discretion and supported by evidence in the record.

There also was no error in the court's order of pendente lite support. In a matrimonial matter, "the court may make such order as to the alimony or maintenance of the parties . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just." N.J.S.A. 2A:34-23. Pendente lite awards are intended to "prevent irreparable harm and to preserve the status quo . . . pending the full investigation" of a matter. Mallamo, 280 N.J. Super. at 11-12.

Here, the court originally awarded defendant pendente lite alimony in the amount of $901 a week and then reduced the award to $750 a week after plaintiff moved for reconsideration. Although plaintiff did not request a Mallamo analysis at trial, the court itself addressed it, stating it was unlikely to grant such

19

relief because the award made "after the motion for reconsideration was a . . . pretty solid figure that was reasonable."

Plaintiff contends on appeal that the court failed to consider the parties' lengthy separation in its award of pendente lite support. However, the parties both testified that their relationship continued during their separation, including spending time together and with their extended families, celebrating holidays and traveling.

We discern no mistaken discretion in the order of pendente lite support or the order for payment of the arrears.

In turning to the order for equitable distribution, both parties challenge the award to defendant of twenty percent equity in the Pennsylvania house. Plaintiff contends defendant should not get any equity in the home as he is solely responsible for the mortgage and all related expenses. Defendant asserts she is entitled to fifty percent of the value of the property.

In addition, plaintiff contends the court erred in equally dividing his tier two pension and ordering him to pay defendant $20,000 for her share of the Audi's value.

The purpose of equitable distribution is to divide property acquired during the marriage in a manner that is just under the circumstances of the case. Painter

v. Painter, 65 N.J. 196, 209 (1974). When equitably distributing marital property, a judge must "decide[] what specific property of each spouse is eligible for distribution, . . . then determine its value for purposes of such distribution, and [lastly,] decide the most equitable allocation between the parties after analysis of the statutory factors set forth N.J.S.A. 2A:34-23.1." Genovese v. Genovese, 392 N.J. Super. 215, 225-26 (App. Div. 2007) (citing Rothman v. Rothman, 65 N.J. 219, 232 (1974)). Property need not be equally allocated if the "sole ownership or allocation of a major share to one of [the parties] is warranted by all the financial and personal considerations underlying the equitable distribution plan." Daeschler v. Daeschler, 214 N.J. Super. 545, 553 (App. Div. 1986).

We evaluate Family Part decisions concerning equitable distribution under an abuse of discretion standard. See Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443-44 (App. Div. 1978). When applying that standard, "[w]e must determine 'whether the trial court mistakenly exercised its broad authority to divide the parties' property or whether the result reached was bottomed on a misconception of law or findings of fact that are contrary to the evidence.'" Sauro v. Sauro, 425 N.J. Super. 555, 573 (App. Div. 2012) (quoting Genovese, 392 N.J. Super. at 223). We will affirm an equitable distribution award if "the

21

trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000) (citing Perkins v. Perkins, 159 N.J. Super. 243, 247-48 (App. Div. 1978)).

As stated above, after considering the statutory factors, the trial judge made extensive and thoughtful findings in reaching his determination regarding the equitable distribution of the Pennsylvania house. It was a short-term marriage, the parties were separated for four years, and plaintiff purchased the home just after the separation and continuously lived there. Plaintiff was solely responsible for the mortgage payment and all expenses related to the home. Defendant had spent some holidays and a few weekends at the home during the five years plaintiff owned it.

Given these circumstances, it was well within the trial court's "broad authority" to fashion the distribution of the property on a less than even split. The parties have not demonstrated the factual findings were unsupported by the evidence. To the contrary, the court was thorough in explaining the reasons for its findings and the equitable distribution of the property. We discern no reason to disturb the award.

We also see no misapplication of discretion in the equitable distribution of the parties' vehicles. The court relied on plaintiff's own testimony regarding the value of his Audi and ordered plaintiff to pay defendant half of its residual value. Moreover, plaintiff has not produced any evidence to contradict the court's assessment.

We next address plaintiff's tier two pension. For the first time, plaintiff contends these pension benefits are only subject to equitable distribution if the spouses are married for ten years. He cites to 45 U.S.C. § 231 (The Railroad Retirement Act of 1974) without any further specific argument to support his proposition.[2]

Generally, pensions are subject to equitable distribution under New Jersey Law. L.M. v. State, Div. of Med. Assistance & Health Servs., 140 N.J. 480, 496 (1995) (citing Marx v. Marx, 265 N.J. Super. 418, 425 (Ch. Div. 1993)). It is "well established that the right to receive benefits accruing to a spouse subsequent to a divorce are subject to equitable distribution if they are related to the joint efforts of the parties." Marx, 265 N.J. Super at 425 (citations

---

[2] In the appendix provided with the reply brief, plaintiff includes two pages from an unnamed source discussing the tier two benefits. These documents were not provided to the trial court. We note only that the documents refer to a divorced spouse's right to an annuity, not a division of the pension benefit.

A-1700-19

omitted).  Courts often award a "coverture fraction" in which the numerator "is the period of pension plan participation during the marriage and the denominator is the total period of plan participation necessary to the receipt of benefits." Ibid. (citation omitted).

Plaintiff has failed to point to any language in the Railroad Retirement Act of 1974 to contradict New Jersey's general policy of subjecting pensions to equitable distribution.  And, neither of his counsel raised the issue in their respective briefs.  Therefore, we "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

The trial court did not err in ordering an even split of the marital coverture fraction of the tier two pension benefits for the nine years the parties were married.  If the pension cannot be divided pursuant to a QDRO as ordered, the parties should make the appropriate post-judgment application before the trial court.

In her cross-appeal, defendant contends the trial court abused its discretion in denying her request for counsel fees. The assessment of counsel fees is discretionary. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001); Eaton v. Grau, 368 N.J. Super. 215, 225 (App. Div. 2004). In our review, "[w]e will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

An allowance for counsel fees is permitted to any party in a divorce action, Rule 5:3-5(c), subject to the provisions of Rule 4:42-9. Here, the judge denied the request for fees after considering all of the factors under Rule 5:3-5 and RPC 1.5(a). The court noted that it considered whether plaintiff acted in good faith, the alimony and equitable distribution awards, the arrears payment, and the parties' four-year separation. We are satisfied the determination was the product of a careful consideration of the applicable factors and was not a mistaken exercise of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1700-19